# Moore v. Barber Asphalt Paving Co.

## *Action of Assumpsit.*

1. *Contract of sale; no implied warranty when article sold upon personal inspection.*—When goods or articles are sold after personal inspection by the purchaser and there is no express warranty as to the quality of the article sold or its fitness for any particular purpose, upon the delivery of the identical goods sold in accordance with the contract, there is a compliance on the part of the seller with his part of the contract, irrespective of the quality or suitableness of the article for the purpose for which it was bought, which renders the purchaser liable.

2. *Charges to the jury; properly refused when abstract.*—A charge which is not based upon any evidence in the cause, is properly refused, even though it asserts a correct principle of law.

3. *Evidence; error in admitting copies of contract cured by introduction of the original.*—Errors committed by the court in permitting copies of a contract sued on to be introduced in evidence, are cured by the subsequent introduction of the original contract.

4. *Same; when testimony not shown to be hearsay.*—In an action to recover the price of an article sold, the testimony of the agent of the plaintiff that the identical article purchased by the defendant, after inspection, was delivered to him, is not hearsay, when such agent testifies positively and of his own knowledge that the article purchased was delivered as required by the contract.

5. *Action on a contract of sale; admissibility in evidence of receipt to prove delivery.*—In an action to recover the price of goods, where, by the contract of sale, the plaintiff was to deliver the

[Moore v. Barber Asphalt Paving Co.]

goods at a wharf, from which point they were to be trans-
ported to the defendant, a receipt signed by one who was in
charge of a ·barge, which was at the point on the wharf
designated for delivery in the contract, and by which the
goods were to be carried to the defendant, is admissible in
evidence as tending to show delivery to the buyer as con-
tracted for.

6. *Same; admissibility of parol evidence to show what goods were
sold.*—In an action on a written contract for the sale of cer-
tain articles of merchandise, which were inspected by the
purchaser, it is competent for the plaintiff to show by parol
evidence what were the articles, which, according to the writ-
ten agreement, were to be sold; it being permissible to resort
to parol testimony in order to ascertain the nature and qual-
ities of the subject to which a written contract refers.

7. *Plea of recoupment; burden of proof.*—A plea of recoupment
being in the nature of a new suit begun by the defendant
against the plaintiff, a joinder in issue on such plea, places
upon the defendant the burden of proving all the material
allegations of the plea.

8. *Same; same; action to recover for price of merchandise sold.*—In
an action to recover the price of certain articles of merchan-
dise sold in a specified quantity, after inspection, a plea of
recoupment which alleges that there was a failure to de-
liver to the defendant the specified quantity, and as a result
the plaintiff suffered damages, is not sustained, where there
is no evidence submitted to the jury from which they could
ascertain the fact that the defendant was damaged by the
alleged failure, and the extent of such damage.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WILLIAM S. ANDERSON.

The appellee sued the appellant for $1,400. The com-
plaint contained the common counts and two special
·counts. A demurrer was sustained to the third count,
which was one of the special counts, and no amend-
ment was made. The remaining special count, the sec-
ond, claimed $1,400 for the breach of an agreement in
writing between plaintiff and defendant, whereby de-
fendant, in consideration of the plaintiff's agreeing to
deliver to barges on the Mississippi river, at or near the
foot of Girod street, in the city of New Orleans, Lou-
isiana, and at the foot of General Taylor street, in said
city of New Orleans, one thousand cubic yards of maca-
dam at two and 70-100 dollars ($2.70) per cubic yard
(the measurement of plaintiff to be checked by engineer

[Moore v. Barber Asphalt Paving Co.]

at Port Eads, in the State of Louisiana) agreed to take and pay therefor, when so delivered, at said price of two and 70-100 dollars per cubic yard, one hundred dollars in cash, and the balance one-half estimate upon delivery to barges, and remainder upon receipt of engineer at Port Eads, without risk to plaintiff. This count then alleged that the plaintiff fully performed its part of said contract, and the defendant had failed to pay fourteen hundred dollars of the purchase price.

To the common counts, the appellant pleaded: 1. The general issue. 2. Payment. 3. That the indebtedness claimed under each of the common counts to be due, arose out of a special contract whereby the plaintiff agreed to sell to the defendant and to deliver to him, on barges, a thousand cubic yards of macadam at two and 70-100 dollars per cubic yard, and that the plaintiff delivered less than five hundred cubic yards of such macadam, and that so much of said macadam as was delivered was mixed with dirt and dust, and was thereby damaged and valueless for use as macadam, unless large sums were expended in screening the same, and that defendant was put to large expenses in separating the macadam from the dust and dirt, and that the value of the macadam that plaintiff failed to deliver to the defendant was two thousand dollars, and that by the delivery to it of said dirt and damaged macadam, and plaintiff's failure to deliver the entire amount agreed upon, the defendant was damaged in the sum of three thousand dollars, which he sought to recoup, and prayed judgment for the excess.

To the special count of the complaint defendant pleaded: 1st. The general issue  2. That before the balance of the fourteen hundred dollars became payable under the contract sued on, plaintiff committed a breach of said contract in this, that it failed to deliver to defendant the one thousand cubic yards provided for by said contract. 3d. That the plaintiff did not deliver to the defendant said quantity of one thousand cubic yards of macadam. 4th. A plea of recoupment substantially the same as the 3d plea to the common counts.

Demurrers were interposed to these pleas, which were overruled, and issue was joined on said pleas.

The evidence showed that Richard Sheridan, Jr., as the agent of defendant, went to New Orleans and purchased from one Tupper, agent of plaintiff, under a

written contract, dated January 4th, 1889, a thousand cubic yards of macadam, to be delivered on barges at the foot of Girod street and General Taylor street, at two and 70-100 dollars a cubic yard, measurement to be checked by engineer at Port Eads, terms of payment to be one hundred dollars in cash, one-half of the balance upon delivery to barges, and the balance upon receipt of engineer at Port Eads, it being understood that Tupper should take no risk in delivery. The contract is in the form of a proposition signed "T. Tupper," and accepted "R. Moore & Company, by R. Sheridan, Jr." There are no words qualifying the character of the macadam to be delivered, nor stating whether it is to be cleaned or screened, or otherwise. This contract is set forth in the opinion at length.

The deposition of T. Tupper, who was the representative of the plaintiffs in making the contract for the sale of the macadam, was introduced in evidence. Said Tupper testified therein that he made it a condition of the sale that Sheridan, the agent and representative of R. Moore & Co., should examine the macadam and approve the quality before the contract was entered into, and that Sheridan went and examined it, and after such examination said that it would suit, and the contract was thereupon made. This witness Tupper further testified that the 1000 cubic yards of macadam which was bought by R. Moore & Co. was delivered on the wharf of the Mississippi river at the points designated in the contract; that it was the macadam which had been examined by Sheridan, the defendant's agent, and that the macadam delivered was the 1000 cubic yards which was bought by the defendant. He further testified that this macadam was delivered by the plaintiff on the wharf of the Mississippi river opposite barges placed there to receive the same, and that it was received by Capt. W. M. Woods, who was in charge of said barges. He further testified that there was still due to the plaintiff from the defendant under such contract the sum of $1,100. The defendant objected to each of these portions of the witness Tupper's testimony, upon the ground that it was hearsay evidence. Each of the objections was overruled, and the defendant separately

excepted thereto. These exceptions constitute the bases of 13 assignments of error on the present appeal.

On the cross-examination of the witness Tupper, he testified positively and of his own knowledge that 1000 cubic yards of macadam were delivered to the barges under said contract. In his testimony the witness Tupper further testified that upon the delivery of the 1000 cubic yards of macadam there was given a receipt therefor, signed, "W. M. Woods, per Eldridge." It was shown by the evidence that Eldridge acted in giving the receipt for Capt. W. M. Woods. This receipt was attached as an exhibit to Tupper's deposition. The defendant objected to the introduction of this receipt in evidence, and duly excepted to the court's overruling his objection.

It was shown by the evidence that in the transportation of the 1000 cubic yards of macadam it was carried upon two barges; that while in transit, one of the barges was sunk; that the macadam on one barge, variously estimated to be between 500 and 600 cubic yards, was delivered at Port Eads. The evidence for the defendant tended to show that the macadam which was delivered was full of dirt, and was rejected by the engineer at the place where it was to be used; that the defendant had to incur the expense of having it screened to clean it from this dirt, and thereby lost something over 100 cubic yards.

There was also testimony on behalf of the defendant that he tried to make up the deficiency in the quantity delivered, but was unable to do so, except at very great expense.

There were several charges given at the request of the plaintiff, and several charges refused to the defendant, to each of which rulings the defendant separately excepted. It is unnecessary to set out any of these charges, except the first charge, which was given at the request of the plaintiff, the giving of which forms the basis of the 43d assignment of error, and which is as follows: "If the jury believe from the evidence that plaintiff agreed to sell and defendants to buy one thousand cubic yards of macadam, and that defendant, by themselves or their agent thereto authorized, examined said macadam, or had full opportunity to examine said macadam, before they purchased, then in such case the defendants became and were liable to pay to the plaintiff

for all said macadam so delivered to and received by defendants under said contract, provided the same was such macadam as had been exhibited to the said defendants, or to their said agents, prior to the making of the contract; and the defendants would be bound to pay the price agreed upon therefor to the extent of such delivery, provided the amount delivered should not exceed one thousand cubic yards, unless defendant had some cross demand against plaintiff in reduction of such price."

There were verdict and judgment for the plaintiff, assessing its damages at $515.97. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

GREGORY L. & H. T. SMITH, for appellant.—The court erred in admitting in evidence the copies of the contract sued on. The original was not accounted for and the copy was clearly secondary and inadmissible.—*Lewis v. Herndon*, 56 Ala. 186; *L. & N. R. R. Co. v. Orr*, 94 Ala. 602; *Home Protection of N. A. v. Whidden*, 103 Ala. 203.

The answers of the witness Tupper as to the quality of the macadam delivered should have been excluded. The answers of the witness in each of these instances are his conclusions, based upon facts as to which he only had hearsay evidence, and, as his answers as to the facts should have been ruled out, it follows that his conclusions as to such facts should likewise have been excluded.

But even if the opinions so expressed had not been based upon hearsay evidence, it was not admissible for the witness to state the amount of damages the plaintiff sustained, nor was it admissible for him to make similar statements.—*Young & Co. v. Cureton*, 87 Ala. 728; *Trammell v. Ramage*, 97 Ala. 666.

The witness attached to his deposition a receipt for one thousand cubic yards of macadam, signed W. M. Woods, per Eldridge, without proving who Eldridge was, or by what authority he gave the receipt. Such a receipt is the declaration of an unknown person not shown to have been authorized in any way to bind defendant, and should have been excluded.—*Postal Tel. Cable Co. v. Brantley*, 107 Ala. 683.

When the plaintiff failed to supply the quantity of macadam it had contracted for, the defendant exercised

every diligence to obtain other macadam to take its place, and supplied it with as nearly the same material as he could get. This being the case, he was entitled to the difference between the agreed price and what he had to pay for the substituted macadam, even though it was not identically the same material.—*Traverse v. Montpelier,* 62 Vt. 87; 19 Atl. Rep. 715.

The first charge requested by the plaintiff, which is made the basis of the 43d assignment of error, should not have been given. This charge asserts in substance that even though the macadam was dirty and damaged, and thereby rendered valueless unless cleaned, still the defendant could not recoup damages, if his agent inspected it before purchasing it. This is error. In the absence of a replication and confession in avoidance, the defendant was entitled to recover upon his plea, if proven.—1 Greenl. on Evidence, §50; *C. & W. R. Co. v. Wood,* 86 Ala. 164; *Reynolds v. Bell,* 84 Ala. 496.

CLARKE & CLARKE and PILLANS, TORREY & HANAW, *contra.*—1. The contract, though made by Tupper, the agent, in his own name, was suable on, by his principal, the plaintiff.—*Deitz v. Insurance Co.,* 13 Am. St. Rep. 909; *Foster v. Smith,* 88 Am. Dec. 604; 1 Benjamin on Sales, Corbin's Am. notes, §237, n. 37.

2. The plaintiff could recover for whatever goods of the sort described in the contract, when actually delivered and received and retained by defendant.—*Raisin Fertilizer Co. v. Barrow,* 97 Ala. 694; *Richards v. Shaw,* 67 Ill. 222; 2 Benjamin on Sales, (Corbin's ed.), p. 903, n.; 1 Benjamin on Sales, p. 70, n. 12.

3. The plaintiff could recover for the goods so delivered and retained, upon the common as well as the special counts.—*Raisin Fertilizer Co. v. Barrow,* 97 Ala. 694; *Richards v. Shaw,* 67 Ill. 222; *Vincent v. Rogers,* 30 Ala. 471; *Darden v. James,* 48 Ala. 33; *Harralson v. Stein,* 50 Ala. 347.

4. The original contract in writing was put in evidence, the defendants admitting its execution without proof of the signatures, but denying its competency as not being shown to be the contract sued on and as a variance. The witness Tupper in testifying, attached copy of this contract to his deposition and swore, that it was a copy of the contract made and acted upon. We insist that it was not erroneous, the original contract

being in evidence, for Tupper's deposition to refer to a copy annexed to and exhibited with it in order to identify the contract concerning which he spoke; but if there was any error in not excluding copy of the contract which he attached, it was error without injury, the original being before the court, and, therefore, not such error as should work a reversal.—1 Brick. Dig., 780, §96; *Ex parte Keenan*, 21 Ala. 558; *Fireman's Ins. Co. v. McMillan*, 29 Ala. 147.

5. The burden of proof on the recoupment plea was surely on defendant. "The true solution of the question is that which has been stated, that he who in a court of justice undertakes to establish a claim against another, or to set up a release from another's claim against himself, must produce the proof necessary to make good his contention. This proof may be either affirmative or negative. Whatever it is, it must be produced by the party who seeks forensically either to establish or defeat a claim."—1 Wharton Evidence, (2d ed.), §§354, 356, 357; Code of 1886, §2683; 22 Am. & Eng. Encyc. of Law, 343, 353.

BRICKELL, C. J.—The defendant Moore, under the name of R. Moore & Co., contracted to buy from plaintiff, through one Tupper, its agent in New Orleans, one thousand cubic yards of macadam at a given price per cubic yard. The contract was as follows:

"R. Moore & Co. of Mobile, Ala. Gentlemen: We will deliver to barges on Mississippi river at or near foot of Girod street and at foot of General Taylor street, one thousand cubic yards of macadam at two 70-100 dollars per cubic yard. Our measurement to be checked by an engineer measurement at Port Eads. The terms of payment to be as follows: say, one hundred in cash, and balance due one-half estimate upon delivery to barges, and balance upon receipt of engineer at Port Eads. It being understood that we take no risk in delivery. We will hire carts and do all possible to make delivery during next week.

"Yours truly,

"T. Tupper."

"Accepted terms as above stated.

"R. Moore & Co.
"by R. Sheridan, Jr."

The plaintiff's complaint contained the common counts, and a special count alleging in substance the above contract and its breach. The pleas of which we need take notice were the general issue, and a plea of recoupment. On the trial of this cause fifty-two exceptions were reserved which here are grounds for as many assignments of error. It is not our purpose to discuss each one of the assignments of error, for the principles of law they invoke are few and make this unnecessary.

It was proven by the plaintiff that the macadam, the subject of the sale, was in a warehouse in New Orleans and was examined by Sheridan, the agent of the defendant, before the contract to sell was consummated. There was no express warranty as to the quality of the macadam or its fitness for any particular purpose. The personal inspection by Moore's agent of the lot of macadam from which 'his was to be taken, and his agreement to buy from that specific lot, precludes an implied warranty. A delivery of one thousand cubic yards of this macadam "at the foot of Girod street and at the foot of General Taylor street," was a compliance with his part of the contract by plaintiff, irrespective of the quality or suitableness of the macadam for the purpose for which it was bought.—Benjamin on Sales, §965. "When goods are sold on inspection, there is no standard but identity, and no warranty implied other than that the identical goods sold and no others shall be delivered."—*Carson v. Baillie,* 19 Penn. 375; *Deming v. Foster,* 42 N. H. 174; *Perry v. Johnston,* 59 Ala. 648.

There was no fraud, or evidence thereof, on the part of the agent of plaintiff, Tupper, and therefore the assignment of error 43 is not well taken. The court may, well refuse a charge not based upon any evidence in the cause, even though the charge embodies a correct principle of law.

The introduction of the original contract, which was done in this case, cured whatever errors the court might have committed in permitting copies to be produced in evidence.

The thirteen assignments of error founded upon exceptions to the evidence of Tupper are not well taken. It does not appear on cross-examination that Tupper's statements were based on hearsay. He testified posi-

tively, and of his knowledge, that one thousand cubic yards of macadam were delivered to the barges.

There was no error in admitting in evidence the receipt signed by Eldridge, who was in charge of the barge. It was competent for plaintiff to prove the delivery of the macadam to a carrier or successive carriers in the execution of his contract. The delivery to the barge was of course not conclusive evidence of a delivery to defendant; but it was competent evidence. This being so, the receipt was competent evidence unless objected to on grounds other than those disclosed by the abstract.

It was competent in this case for the plaintiff to show by parol testimony the macadam which, according to the written agreement, was to be sold. "As it is a leading rule in regard to written instruments, that they are to be interpreted according to their subject matter, it is obvious that parol or verbal testimony must be resorted to in order to ascertain the nature and qualities of the subject to which the instrument refers." Greenl. Ev., §286.

In the plea of recoupment defendant sets out that plaintiff agreed to deliver 1000 cubic yards of macadam, and that he delivered only about 500 cubic yards, which was full of dirt and trash. Upon this plea plaintiff took issue. A plea of recoupment is in the nature of a new suit begun by the defendant against the plaintiff, and a joinder in issue on such a plea, like the general issue to a complaint, places on the defendant the burden of proving all the material allegations of the plea. It will be observed that it is not alleged in this plea that the macadam delivered was not the macadam bought; therefore, construing the pleading most strongly against the pleader, as we are bound to do, the condition of the macadam, good or bad, was not a breach of the contract, and the macadam delivered was the macadam bargained for. The other allegation that only 500 cubic yards were delivered, when it was bargained that 1,000 should be delivered, was the only material issue between the parties, not excepting, of course, the averment of the plea as to the damages sustained by the defendant.

Upon the defendant then the burden of proving two things rested: 1st, the failure to deliver the number of

cubic yards of macadam called for by the contract, and 2d, the damage resulting from this breach. Unless evidence was introduced upon both of these averments, defendant cannot complain of the charges of the court in this connection. The defendant, we think, failed utterly to prove that he had sustained any damage, assuming that there was a short delivery. There was no attempt whatever to show what was the market value of the macadam which plaintiff undertook to furnish to defendant. No evidence whatever was submitted to the jury from which it could ascertain the fact of defendant's damage, to say nothing of its extent.

We need not notice other assignments of error. Upon examination of the record, we are of opinion that no error was committed prejudicial to the defendant; and the judgment of the circuit court is affirmed.