<span>(121 So. 701)</span>

## LOUIS PIZITZ DRY GOODS CO. v. HOUSE OF VAN PRAAG, Inc. (6 Div. 199.)

Supreme Court of Alabama.    April 4, 1929.

184

Leader & Ullman, of Birmingham, for appellant.

Ritter, Wynn & Carmichael, of Birmingham, for appellee.

THOMAS, J. The suit was for the purchase price of refrigerators sold to appellant in New York. The complaint was on the common counts, and the pleas were general issue and special pleas 2 and 3. Demurrers were overruled as to the plea of express warranty (plea 2), and sustained to plea 3. The case was tried by the court without a jury; there was no special finding of fact demanded or had; and the judgment was for plaintiff.

The judgment of the court was equivalent to the verdict of a jury that the appellate court will not disturb, unless the conclusion reached by the judgment appealed from is contrary to the weight of the evidence, or there is no evidence to support the judgment. Pinckard v. Cassels, 195 Ala. 353, 70 So. 153; Benton Merc. Co. v. Owensboro Wagon Co., 207 Ala. 49, 91 So. 784; Odom v. County Coal Co., 212 Ala. 374, 103 So. 42; Acts of 1915, p. 824; Ann. Code of 1928, § 9498, Marsh v. Elba Bank, 205 Ala. 425, 88 So. 423; Bowling v. State, 204 Ala. 405, 85 So. 500. See, also, Bookmiller v. Jones, 216 Ala. 298, 113 So. 32; Hall v. Brooks, 209 Ala. 486, 96 So. 341; Hackett v. Cash, 196 Ala. 403, 72 So. 52.

We have examined the evidence; it was conflicting, and has the effect of a verdict of a jury. Shows v. Jackson, 215 Ala. 256, 110 So. 273; Bookmiller v. Jones, supra. It is shown that the goods were purchased by appellant, after an inspection by the agent, from a dealer and not a manufacturer, and there was no *express or implied warranty* of quality or soundness. Moore v. Barber Asphalt Co., 118 Ala. 563, 23 So. 798; Herring v. Skaggs, 62 Ala. 180, 34 Am. Rep. 4. See other authorities collected in Gulf Electric Co. v. Fried, 119 So. 691, 692,[1] in this court. In New York the rule is the same, Whitman v. Jacobson (Sup.) 119 N. Y. S. 246; Piller v. Piser, 67 Misc. Rep. 445, 123 N. Y. S. 105; and in federal courts, Bernard v. Kellogg, 77 U. S. (10 Wall.) 383, 19 L. Ed. 987; Slaughter v. Gerson, 80 U. S. (13 Wall.) 379, 20 L. Ed. 627. In the case of Snow v. Schomacker Mfg. Co., 69 Ala. 111, 44 Am.

[1] 218 Ala. 684.

Rep. 509, the sale was by a "manufacturer" rather than a "dealer"; and in Franklin Motor Car Co. v. Ratliff, 207 Ala. 341, 92 So. 449, the declaration was that the automobile dealer impliedly warranted that the car was reasonably fit for use as of that kind and class, and that it would not be damaged between sale and delivery. See, also, Troy Groc. Co. v. Potter & Wrightington, 139 Ala. 359, 36 So. 12.

■ There was no reversible error in refusing to allow the witness Moser to say it was not such an ice "box that Louis Pizitz Dry Goods Company could conscientiously sell to the public and represent as being a merchantable box," or whether it was "a box that you could sell with a warranty that it was merchantable." It called for the mental and moral status of that witness, rather than the fact of intrinsic worth and physical composition of the subject-matter. The witness was immediately permitted to state that these boxes are not reasonably adapted to the purpose for which they were sold, were not merchantable, and that a box of that description, made as that box was made, has no market value to-day: that "that box should not retail at the outside over $25.00. It shouldn't wholesale over $14.00 or $15.00 at the outside;" that in a standard "ice box the outside material is made either of wood or metal"; that the subject of said purchase was not so constructed and not that kind of a box.

There was conflict in the evidence as to the terms of sale after inspection by appellant's agent. Plaintiff's witness, Stillman, stated that Mendelsohn and Goldsmith were present and conducted the negotiations for defendant, inspecting and examining the refrigerators for a period variantly stated as one-half or three-quarters of an hour, and that "the sale was made by" witness, and that "the goods were sold as are." This tendency of the evidence was supported by Goldsmith, that they inspected the articles "less than half an hour"; that "a portion were open to inspection"; that those in "frame boards" could be seen "fronts and backs"; that it was stated that the same were sold originally to Gimble Department Store and rejected "because they arrived too late"; that there was some defect about the hardware, and was so stated before purchase; and this witness did not state the boxes were represented or warranted as "standard boxes."

Defendant's evidence by Mendelsohn was to the effect that "Mr. Solomon told me these ice boxes were sold to Gimble Brothers but arrived too late and they refused to accept them, and that he would let me have them at a special price. He said these boxes were manufactured by a standard manufacturer, were of standard make and had solid sides and solid cork lined tops; and he said they were worth $39.50, and that I could buy them

at a price, and the only thing that was wrong with them was that the handles on the doors were a little bit off, and that could be easily fixed."

"Q. Did you see the ice boxes and examine them? Tell in detail just what kind of boxes they were; what examination you made of them, and in what respects they measure up to the representation made by Mr. Solomon. A. I only saw one ice box. Mr. Solomon opened the door and showed me it was porcelain lined, and he showed me that the hinge on the door was the only thing that was the matter with the ice box. He said the rest of the boxes were of standard make, made by a standard manufacturer, and that they were solid cork lined tops and sides. That was all."

Witness further stated that he called Mr. Pizitz by telephone and related to him what Solomon had stated, and the instruction then given him was: "If they were of a standard make by a standard manufacturer, to purchase the amount of, I believe, forty refrigerators;" that he only saw one ice box that was not crated.

In Troy Grocery Co. v. Potter & Wrightington, 139 Ala. 359, 36 So. 12, the action was by the dealer in assumpsit for the price of fish in containers. It was held that ordinarily there was an implied warranty on the sale of chattels when the purchase was for a special and disclosed purpose, and that the vendor was bound without express stipulations; that the articles sold were reasonably serviceable for the declared use and purpose. Snow v. Schomacker, 69 Ala. 111, 44 Am. Rep. 509, was the case of a manufacturer; Kennebrew v. Southern, etc., Co., 106 Ala. 377, 17 So. 545, and Franklin Motor Car Co. v. Ratliff, 207 Ala. 341, 92 So. 449, were suits by dealers. See, also, Gulf Electric Co. v. Fried, 218 Ala. 684, 119 So. 691, 692.

It is true that, if there was express warranty, the seller cannot mark the order "as are" and thus deprive the purchaser of the benefit of the warranty relied upon, that the goods were substantial and fitted for the purpose for which the same were purchased, Menihan Co. v. Lipschitz Co. (Mo. App.) 206 S. W. 233; and where the inspection was only casual or partial, Foote v. Wilson, 104 Kan. 191, 178 P. 430; Crescent Cotton Oil Co. v. Union Co., 138 Tenn. 58, 195 S. W. 770. As to the number of boxes that were uncrated, on the floor and subject to inspection, there was direct conflict in tendencies of the evidence.

■■ The question of an implied warranty is taken out of the case by the express warranty contained in plea 2. There was conflicting evidence as to the terms of sale as to this. The court's finding of fact was against express warranty, and in Fields v. First National Bank, 216 Ala. 381, 113 So. 298, this court said: "It may be that the weight of the evidence supports the conten-

186

tions of defendant, but we could not for that reason set aside the judgment of the trial court based on the testimony of witnesses heard viva voce, and being, therefore, in practical effect, the equivalent of a jury's verdict."

And in Curb v. Stewart, Adams & Co., 215 Ala. 511, 110 So. 804, the court declared the action of the trial court in finding and in denying the motion for a new trial will be sustained, unless, after allowing all reasonable presumptions in favor of the correctness of such action, the preponderance of the evidence is against such judgment. Here the court saw and heard a material part of this evidence viva voce, and there is application for the rule announced in Finney v. Studebaker Corp. of America, 196 Ala. 422, 72 So. 54; Hackett v. Cash, 196 Ala. 403, 72 So. 52; Hodge v. Joy, 207 Ala. 198, 92 So. 171; Cotton v. Courtright, 215 Ala. 474, 111 So. 7, to support the judgment and the ruling on the motion for a new trial. We cannot say the action of the trial court was plainly wrong and palpably contrary to the weight of the evidence. American Express Co. v. Mobile Co., 214 Ala. 420, 108 So. 238.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.

